**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————

**IN RE CELSIUS CUSTOMER PREFERENCE**          25-cv-7328 (JGK)
**ACTIONS**

                                                              **MEMORANDUM OPINION**
————————————————————————          **AND ORDER**

**JOHN G. KOELTL, District Judge:**

The defendants are 174 former customers of Celsius Network LLC ("Celsius"), a crypto-asset platform that filed for bankruptcy in July 2022. During the ninety days before Celsius's bankruptcy, the defendants withdrew digital assets that they had deposited with Celsius. Mohsin Y. Meghji — the Litigation Administrator appointed under Celsius's reorganization plan and the plaintiff in this case — brought adversary proceedings in the bankruptcy court to avoid those withdrawals, which he alleges are preferential transfers. The defendants now move to withdraw the reference to the bankruptcy court. For the following reasons, the defendants' motion is denied.

**I.**

**A.**

Celsius was founded in 2017 and operated a crypto-asset platform. Decl. Samuel P. Hershey Supp. Opp'n Mem. ("Hershey Decl."), Ex. A ("Compl.") ¶ 19, ECF No. 28.[1] Celsius's customers

---

[1]  Exhibit A is a true and correct copy of the complaint filed in one of the relevant adversary proceedings, Meghji v. King, Adv. Proc. No. 24-1529 (Bankr. S.D.N.Y.).

could, among other things, transfer their crypto assets to Celsius in exchange for weekly interest. Id. Celsius then claimed to lend those assets to other financial entities to generate returns. Id. Celsius account holders could choose to receive their weekly reward payments in kind or in Celsius's in-house cryptocurrency, CEL tokens. Id.

Celsius facilitated these transactions in part through a program called "Earn." Id. ¶ 20. Under the Earn program, participants could place digital assets in accounts with Celsius in return for rewards. Id. Celsius's terms of use provided that customers could withdraw assets corresponding to the balances in their Earn accounts or transfer those assets between accounts at Celsius. Id. ¶ 23.

In May 2022, the cryptocurrency TerraUSD substantially declined in value. Id. ¶ 28. The collapse of TerraUSD caused customers to withdraw billions of dollars' worth of digital assets from Celsius, which lacked the liquidity to meet its customers' withdrawal demands. Id. ¶¶ 29-31.

On June 12, 2022, Celsius paused all withdrawals from its platform to prevent a bank run. Id. ¶ 32. Most of Celsius's customers were unable to withdraw or sell their digital assets, id.; the defendants are Celsius customers who were able to withdraw all or some of their digital assets before Celsius paused withdrawals. Id. ¶ 2.

**B.**

On July 13, 2022, Celsius and its affiliated debtors (the "Debtors") voluntarily petitioned the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") for relief under chapter 11 of the Bankruptcy Code. Id. ¶ 33. On November 9, 2023, the Bankruptcy Court entered an order confirming the Debtors' Modified Joint Chapter 11 Plan of Reorganization (the "Plan"). Case No. 22-10964 (Bankr. S.D.N.Y. Nov. 9, 2023), ECF No. 3972. On January 31, 2024, the Plan became effective. Case No. 22-10964 (Bankr. S.D.N.Y. Jan. 31, 2024), ECF No. 4298. In accordance with the Plan, the Bankruptcy Court appointed the Litigation Administrator and empowered him to prosecute avoidance actions on behalf of the post-effective date Debtors and their estates. In July 2024, the Litigation Administrator filed approximately 2,400 adversary proceedings against former Celsius customers, including the defendants, seeking to avoid allegedly preferential transfers under sections 547 and 550 of the Bankruptcy Code (the "Avoidance Actions"). See, e.g., Hershey Decl. Ex. B.

Given the large number of adversary proceedings, the Bankruptcy Court consolidated the Avoidance Actions "for filings relating generally to litigation against certain customers of Celsius Network LLC and its affiliated post-effective date debtors who withdrew assets during the 90 days before the bankruptcy

filing." Adv. Pro. No. 24-4024 (Bankr. S.D.N.Y. Sept. 6, 2024), ECF No. 1. On July 29, 2024, the Bankruptcy Court directed the parties to litigate certain issues of law and fact common to the Avoidance Actions. Case No. 22-10964 (Bankr. S.D.N.Y. July 31, 2024), ECF No. 7565. On August 26, 2024, counsel for the defendants identified in a filing with the Bankruptcy Court the defendants' expected safe-harbor defense under 11 U.S.C. § 546(e) as one such common issue. Case No. 22-10964 (Bankr. S.D.N.Y. Aug. 26, 2024), ECF No. 7631, at 3. The defendants stated in the same filing that they "anticipate[d] filing a motion for withdrawal of the reference of matters relating to the § 546(e) safe harbor." Id. at 3 n.2.

The Bankruptcy Court divided the litigation into at least two phases.[2] During Phase One, the parties would litigate certain purely legal issues — specifically, whether the presumption against extraterritoriality applied to the Avoidance Actions; whether the Bankruptcy Court has personal jurisdiction over the non-U.S. defendants; and whether the definition of "Withdrawal Preference Exposure" under the Plan governs for purposes of calculating the amount of the defendants' potential liability in

---

[2] Although the Bankruptcy Court outlined two phases, Hershey Decl. Ex. C (the "Procedures Order"), Ex. 2 at 1–2, the parties at oral argument represented that the Bankruptcy Court would oversee a third phase during which the defendants could raise any individualized defenses or objections to the plaintiff's avoidance claims.

the Avoidance Actions. Procedures Order, Ex. 2 at 1. During Phase Two, the parties would litigate certain factual issues requiring discovery and testimony — specifically, whether the plaintiff's avoidance claims are barred by the ordinary-business-terms defense under 11 U.S.C. § 547(c)(2)(B); whether the plaintiff's claims are barred by the safe-harbor defenses under 11 U.S.C. § 546(e) and (g); and whether the presumption of insolvency during the preference period can be rebutted. Procedures Order, Ex. 2 at 2.

The defendants objected to certain provisions of the Procedures Order and purported to reserve their right to seek withdrawal of the reference to the Bankruptcy Court. Adv. Pro. 24-4024 (Bankr. S.D.N.Y. Sept. 24, 2024), ECF No. 11, at 7–8. At the hearing on the Procedures Order, the Bankruptcy Court observed that "[t]he litigation administrator makes clear that nothing in the proposed procedures inhibits the defendants' right to bring a motion to withdraw the reference." Hrg. Tr., Adv. Pro. No. 24-4024 (Bankr. S.D.N.Y. Oct. 8, 2024), ECF No. 29, 102:17–21.

On July 23, 2025, the Bankruptcy Court held a hearing on the Phase One issues. Adv. Pro. 24-4024 (Bankr. S.D.N.Y. July 23, 2025), ECF No. 75. On July 29, 2025, the Bankruptcy Court ruled for the Litigation Administrator on all three Phase

One issues. Adv. Pro. 24-4024 (Bankr. S.D.N.Y. July 29, 2025), ECF No. 77.

On September 2, 2025, the defendants moved this Court to withdraw the reference to the Bankruptcy Court.

## II.

District courts have original jurisdiction over civil proceedings "arising under" or "arising in or related to cases under" the United States Bankruptcy Code, also known as "title 11." 28 U.S.C. § 1334(b). "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges of the district." 28 U.S.C. § 157(a). In this district, "all Chapter 11 cases are automatically referred to bankruptcy judges via a standing order." In re Lyondell Chem. Co., 467 B.R. 712, 718 (S.D.N.Y. 2012); see also In re Standing Order of Reference Re: Title 11, 12 Misc. 32 (S.D.N.Y. Jan. 31, 2012).

District courts nevertheless retain authority to withdraw the reference from the bankruptcy court in two circumstances. First, section 157(d) provides that a district court shall withdraw the reference "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). This is

6

commonly known as mandatory withdrawal. The Court of Appeals for the Second Circuit has construed this provision narrowly "so that it is not utilized as an escape hatch through which most bankruptcy matters can be removed to a district court." In re Laventhol & Horwath, 139 B.R. 109, 114-15 (S.D.N.Y. 1992). Withdrawal is not mandatory "merely whenever non-Bankruptcy Code federal statutes will be considered in the Bankruptcy Court proceeding." In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990). Rather, mandatory withdrawal "is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." Id. A proceeding involves substantial and material consideration of non-bankruptcy federal law when resolving the dispute would require the bankruptcy court to engage itself in the intricacies of non-bankruptcy law, rather than in "straightforward application of a federal statute to a particular set of facts." In re Adler, Coleman Clearing Corp., 270 B.R. 562, 564 n.1 (S.D.N.Y. 2001).

Second, section 157(d) provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding ... on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d) (emphasis added). This is commonly known as permissive withdrawal. Although the statute does not define "cause," the Court of Appeals for the Second Circuit in

In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993), "directed district courts to consider several factors in evaluating a motion to withdraw a bankruptcy reference." Lehman Bros. Holdings Inc. v. Standard Pac. Mortg., Inc., No. 19-cv-4080, 2019 WL 7593628, at *1 (S.D.N.Y. Aug. 23, 2019). Those factors originally included "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." Orion, 4 F.3d at 1101.

The Supreme Court has since held in Stern v. Marshall, 564 U.S. 462 (2011), however, that bankruptcy courts lack constitutional authority to enter final judgments — even in core proceedings — outside a narrow band of circumstances. "[I]t is not the core/non-core distinction but Article III that determines the bankruptcy court's adjudicative authority" because some core claims cannot be finally adjudicated by the bankruptcy court. In re Lyondell, 467 B.R. at 719. "Thus, post-Stern, courts in this District have concluded that the relevant inquiry under the first prong of the Orion test is whether the bankruptcy court has the authority to finally adjudicate the matter." Roman Cath. Diocese v. Certain Underwriters, 634 B.R. 226, 233 (S.D.N.Y. 2021); see also In re Lyondell, 467 B.R. at 719 ("To the extent the core/non-core distinction held a

privileged position among the Orion factors before Stern, this
is no longer the case.").

### III.

The defendants move for both mandatory and permissive with-
drawal of the reference to the Bankruptcy Court. The Court
addresses each argument in turn.

### A.

The defendants first argue that withdrawal of the reference
to the Bankruptcy Court is mandatory under section 157(d) be-
cause resolving their safe-harbor defenses under 28 U.S.C.
§ 546(e) and (g) would require "significant interpretation of
the securities laws or commodities laws." Defs.' Mem. Supp. Mot.
to Withdraw ("Mot. to Withdraw") 11, ECF No. 1-1.

"Regardless of whether withdrawal is discretionary or man-
datory, 28 U.S.C. § 157(d) sets forth a threshold determination
of timeliness." In re Friendly Service & Son, Inc., No. 17-mc-
190, 2019 WL 6307468, at *7 (E.D.N.Y. Nov. 25, 2019). Although
the statute does not define "timely," "courts in this Circuit
have defined timely to mean as soon as possible after the moving
party has notice of the grounds for withdrawing the reference."
In re FMI Forwarding Co., No. 00-bk-41815, 2005 WL 147298, at *6
(S.D.N.Y. Jan. 24, 2005).

The defendants' motion for mandatory withdrawal is un-
timely. On August 26, 2024, the defendants informed the

Bankruptcy Court that they "anticipate[d] filing a motion for withdrawal of the reference of matters relating to the § 546(e) safe harbor." Case No. 22-10964 (Bankr. S.D.N.Y. Aug. 26, 2024), ECF No. 7631, at 3 n.2. The defendants plainly had notice of their grounds for seeking mandatory withdrawal of the reference at that time and therefore should have filed their motion then. But the defendants did not move to withdraw the reference until more than a year later, on September 4, 2025, after the Bankruptcy Court issued an adverse ruling on the Phase One issues. Courts routinely deny motions for mandatory withdrawal after comparable delays. See, e.g., In re Joe's, 2019 WL 6307468, at *7 ("Defendants' nine[-]month delay after removing this action renders the Motion untimely."); Drew v. WorldCom, Inc., No. 06-cv-3407, 2006 WL 2129309, at *3 (S.D.N.Y. July 26, 2006) (motion to withdraw untimely after eighteen-month delay); In re Orion Healthcorp, Inc., 722 F. Supp. 3d 102, 108 (E.D.N.Y. 2024) ("Allied World's fifteen-month delay in filing the motion to withdraw the reference to the Bankruptcy Court renders the motion untimely.").

"More troubling, the timing and circumstances of this motion suggest a tactical attempt at forum shopping." In re Orion, 722 F. Supp. 3d at 108. The defendants delayed filing their motion to withdraw the reference until after they "received an unfavorable decision from the Bankruptcy Court" on the Phase One

10

issues. Id. "That timing indicates tactical maneuvering and serves as an additional ground for denying the withdrawal motion as untimely." Id.

The defendants resist this conclusion with two arguments. First, they insist that the plaintiff's timeliness argument would require them to move to withdraw during some unknowable "Goldilocks moment" — not too soon, not too late. Defs.' Reply Supp. Mot. to Withdraw ("Reply") 2, ECF No. 35. But this argument confuses different issues. The plaintiff argues, with respect to permissive withdrawal, that the defendants' motion is premature to the extent it turns on their purported entitlement to a jury trial, which could be delayed until pre-trial proceedings are complete and the case is ready for a trial by jury. However, the defendants' grounds for mandatory withdrawal do not depend on whether any of the claims or defenses must be decided by a jury. The defendants' motion for mandatory withdrawal is untimely because it rests on grounds that the defendants knew about for over a year.

Second, the defendants claim that they reserved their right to seek withdrawal of the reference, and that both the Bankruptcy Court and the plaintiff recognized the defendants' purported reservation. Reply 3. And because the plaintiff was on notice of the defendants' intention to move to withdraw at some point, "[w]ithdrawal of the reference now would create no

11

hardship." Id. But this argument is also unpersuasive. The defendants chose to litigate the Phase One issued before the Bankruptcy Court and to pursue settlement of their claims for over a year rather than to move promptly to withdraw the reference. That motion is not timely, and neither the Bankruptcy Court nor the plaintiff conceded that a delay of over a year would make the motion timely.

The defendants required the plaintiff to spend substantial resources litigating Phase One issues that do not affect their safe-harbor defenses. Although the defendants claim that they "are not seeking to relitigate Phase One," Reply 4, their tactical delay forced the plaintiff to spend resources litigating issues that would be unnecessary to the resolution of the case if the defendants' safe-harbor defenses were meritorious.

The defendants' motion for mandatory withdrawal also fails because interpreting the securities law is not "necessary for the resolution of the proceeding." In re Ionosphere, 922 F.2d at 995; see also In re Extended Stay, Inc., 466 B.R. 188, 203-04 (S.D.N.Y. 2011) (denying motion to withdraw when the movant "failed to demonstrate that ... federal non-bankruptcy law will dominate other issues"). The defendants' safe-harbor defense is just one of the defenses they raise to the Litigation Administrator's avoidance claims. The defendants separately argue that the plaintiff's avoidance claims are barred by the ordinary-

12

business-terms defense under 11 U.S.C. § 547(c)(2)(B) and be-cause Celsius was not insolvent during the preference period. Procedures Order, Ex. 2, at 2. If the Bankruptcy Court finds ei-ther of these arguments persuasive, it could dispose of the avoidance claims without ever reaching the federal securities-law and commodities-law issues.

Finally, although the defendants make much of the fact that their safe-harbor defenses implicate questions of securities law and commodities law, the defendants fail to explain clearly why those questions will require the Bankruptcy Court to engage in "significant interpretation" of non-bankruptcy law, rather than routine application of existing law to new facts. For example, courts in this district regularly apply the framework from SEC v. W.J. Howey Co., 328 U.S. 293 (1946), to determine whether digital assets are securities. See, e.g., SEC v. Terraform Labs Pte. Ltd., 708 F. Supp. 3d 450, 472–73 (S.D.N.Y. 2023) (although UST, a crypto asset, on its own was not a security, "UST in com-bination with the Anchor Protocol," which allowed UST holders to earn interest payments by depositing their UST in a shared pool from which others could borrow, was a security); SEC v. Ripple Labs, Inc., 682 F. Supp. 3d 308, 324, 328 (S.D.N.Y. 2023) (Rip-ple's institutional sales of XRP constituted investment contracts under Howey, even though "XRP, as a digital token, is not in and of itself" an investment contract); SEC v. Telegram

13

Grp., 448 F. Supp. 3d 352, 367-68, 379 (S.D.N.Y. 2020) (the scheme at issue, consisting of the "full set of contracts, expectations, and understandings centered on the sales and distribution of the Gram," Telegram's native token, was a "security").

Indeed, the Bankruptcy Court has already applied the Howey framework in this bankruptcy to determine whether certain digital assets were securities for purposes of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-2. See In re Celsius Network LLC, 668 B.R. 722, 746-49 (S.D.N.Y. Bankr. 2025) ("While the Howey case did not concern the definition of security under the IAA, focusing solely on the Securities Act, the case is nonetheless instructive as the definition of 'security' under the IAA is virtually identical to the definition under the Securities Act."). This Court has also considered the effect of the securities and commodities laws on Celsius's Earn program. See United States v. Mashinsky, No. 23-cr-347, 2024 WL 4728500, at *4 (S.D.N.Y. Nov. 8, 2024) ("Finding that the Earn Program was a security, as Count One requires, would not be at odds with finding that the Bitcoins that investors deposited with Celsius through the Earn Program are commodities, as Count Two requires."). The defendants' argument that their safe-harbor defenses will require "substantial and material consideration" of non-bankruptcy law is thus unpersuasive.

14

The defendants' motion is untimely and fails to identify any substantial and material consideration of non-Bankruptcy Code federal law that would be necessary to resolve the Avoidance Actions. The motion for mandatory withdrawal of the reference to the Bankruptcy Court is therefore denied.

**B.**

The defendants also contend that they have shown cause for permissive withdrawal of the reference to the Bankruptcy Court. To "determine whether the defendants have shown cause, the Court turns to the factors outlined in Orion, as modified by Stern." Roman Cath. Diocese, 634 B.R. at 233.

**1.**

Before Stern, the first Orion factor asked whether the claim at issue was core or non-core within the meaning of 28 U.S.C. § 157(b). The statute expressly identifies a "proceeding[] to determine, avoid, or recover preferences" as core. Id. § 157(b)(2)(F). Yet after Stern, "the classification of a claim as core or non-core no longer definitively determines whether the Bankruptcy Court may enter final judgment," and thus the proper inquiry now is "whether, under Stern, the Bankruptcy Court has the final power to adjudicate the claim at issue." Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC ("In re Madoff"), 490 B.R. 46, 57 (S.D.N.Y. 2012); see also In re

Northern Boulevard Automall, LLC, No. 20-mc-142, 2022 WL 5184729, at *3 (collecting cases).

Stern teaches that Congress ordinarily "may not withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." Stern, 564 U.S. at 484. There are, however, "three instances where a bankruptcy court may adjudicate finally a claim at issue: (1) if the claim involves a public right; (2) if the process of adjudicating the creditor's proof of claim would necessarily resolve a counterclaim; or (3) if the parties consent to final adjudication by the bankruptcy court." In re FKF 3, LLC, No. 13-cv-3601, 2016 WL 4540842, at *6 (S.D.N.Y. Aug. 30, 2016). None of these exceptions apply in this case.

The public-right exception is limited to "cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's authority." Stern, 564 U.S. at 490. Although the plaintiff does not expressly invoke the public-right exception, the plaintiff does argue that "[t]he Bankruptcy Court can enter final judgments in the Avoidance Actions" because "[a] preference

case is a unique creature of bankruptcy law." Mem. Opp'n Mot. to Withdraw ("Opp'n") 16, ECF No. 27.[3]

This argument fails, however, because "claims for avoidance of preferential transfers, where the creditor has filed no proof of claim, are not subject to the public right exception." In re Arbco Cap. Mgmt., LLP, 479 B.R. 254, 264-65 (S.D.N.Y. 2012). "While the Supreme Court has not expressly held that actions to avoid preferential transfers are matters of private right, the Supreme Court has examined the authority of the bankruptcy court to adjudicate preferential transfer claims in the Seventh Amendment context and determined that preference defendants are entitled to a trial by jury." Id. at 265 (citing Schoenthal v. Irving Tr. Co., 287 U.S. 92, 94-95 (1932)). The Supreme Court in Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 53 (1989), "makes clear that the analysis with respect to a defendant's right under the Seventh Amendment to a jury trial translates to the Article III context." In re Arbco, 479 B.R at 266. Thus if "a preference defendant is entitled to a jury trial before an Article III court where it has not filed a proof of claim against the bankruptcy estate, it follows that the preference defendant

---

[3] The Litigation Administrator also emphasizes that its avoidance claims "are unquestionably core." Opp'n 16. But as explained above, that the avoidance claims are core "would not change the fact that the bankruptcy court would not have final adjudicative authority over them, which is the relevant question after Stern." Roman Cath. Diocese, 634 B.R. at 234.

is entitled to have its claim finally adjudicated by an Article III judge." Id.; see also In re Kossoff PLLC, No. 23-cv-4132, 2024 WL 1892432, at *5 (S.D.N.Y. Apr. 29, 2024) (concluding that claims based on preferential transfers do not fall under the public-right exception).

The second and third exceptions do not apply either, and the plaintiff makes no effort to argue otherwise. The vast majority of the defendants have not filed proofs of claims and do not consent to the Bankruptcy Court's jurisdiction to enter a final judgment. Only eight of the 174 defendants filed proofs of claims, and six of those defendants agreed to expunge their proofs of claims. Reply 8.

Because the Bankruptcy Court lacks authority to enter a final judgment on the plaintiff's avoidance claims, this Orion factor favors withdrawal.

**2.**

Orion also "instructs courts to consider whether [the claim] is legal or equitable, and consequently whether the litigants are afforded the right to a jury trial." In re FKF 3, 2016 WL 4540852, at *14. The Seventh Amendment to the United States Constitution provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The Supreme Court has defined "Suits at common law" to mean "suits

18

in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." Granfinanciera, 492 U.S. at 41.

Congress has by statute prohibited bankruptcy courts from holding jury trials on core claims unless the bankruptcy court is "specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e). Although the Avoidance Actions are plainly core bankruptcy proceedings, 28 U.S.C. § 157(a)(2)(F), the defendants contend that they are legal claims that entitle them to a jury trial, which they do not consent to conducting before the Bankruptcy Court.

"A motion for withdrawal of the reference will not be granted," however, "simply because of a party's demand for a jury trial, without consideration of how far the litigation has progressed." Nisselson v. Salim, No. 12-cv-92, 2013 WL 1245548, at *6 (S.D.N.Y. Mar. 25, 2013). "[S]uch decision would run counter to the court's interest in judicial economy." Id.; see also In re Murphy, 482 F. App'x 624, 628 (2d. Cir. 2012) ("The mere presence of a jury demand in a case does not mandate withdrawal of the reference ...."). Indeed, "courts often find it appropriate to defer withdrawing the reference until a case is trial ready." In re Enron Corp., No. 04-cv-7950, 2005 WL 356856, at *5

19

(S.D.N.Y. Feb. 15, 2005); see also In re Celsius Network LLC, No. 25-cv-1414, 2025 WL 3205478, at *2 (S.D.N.Y. Nov. 17, 2025) ("[E]ven if a claim is non-core and the movant has a right to a jury trial, the issue of withdrawal of a reference becomes ripe only once the case is trial ready. Until that point, the Bankruptcy Court is generally in a superior position to manage what are likely to be complex pretrial proceedings in the case, such that retaining the reference of the case to the Bankruptcy Court until the case is trial-ready would further the interests of judicial economy.").

Under the Bankruptcy Court's scheduling order for Phase Two, the parties' deadline to complete discovery is April 29, 2026, and the parties' deadline to complete briefing on the Phase Two issues is May 27, 2026. Hershey Decl. Ex. E at 5. Only after briefing concludes will the Bankruptcy Court schedule an evidentiary hearing on the Phase Two issues. Id. at 6. "[E]ven assuming that [the] [d]efendants have made a valid demand for a jury trial" on any of the Phase Two issues, "withdrawal of the reference is not yet required or appropriate." Nisselson, 2013 WL 1245548, at *6.

### 3.

Although the Bankruptcy Court lacks constitutional authority to enter a final decision with respect to the avoidance claims, that "factor is not dispositive of a motion to withdraw

a reference." In re Orion, 722 F. Supp. 3d at 110. The other factors identified by Orion, namely the "efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors," 4 F.3d at 1101, all counsel against withdrawing the reference.

The Bankruptcy Court in this case has overseen Celsius's bankruptcy since July 2022 and the Avoidance Actions since July 2024. Furthermore, the parties are several months into the discovery schedule issued by the Bankruptcy Court with respect to the Phase Two issues. "Given the extensive experience the [B]ankruptcy [C]ourt has acquired in this matter, permitting it ... to conduct pre-trial proceedings will be of assistance to this Court and to the parties." In re Lyondell Chem., 467 B.R. at 724. The Bankruptcy Court is thus "best situated to continue managing the pretrial process in this proceeding as it has since" the Litigation Administrator commenced the Avoidance Actions. McCord v. Papantoniou, 316 B.R. 113, 126 (E.D.N.Y. 2004); see also Orion, 4 F.3d at 1101 ("[H]earing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues.").

The defendants resist this conclusion by arguing that they are entitled to a jury trial on the Phase Two issues, and the

21

Bankruptcy Court cannot conduct a jury trial absent the parties' unanimous consent. But "[c]ourts routinely deny motions to withdraw reference despite a litigant's refusal to consent to a jury trial in bankruptcy court because of prevailing concerns about judicial economy." McCord, 316 B.R. at 125-26 (collecting cases). "[A] rule that would require a district court to withdraw reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district court and bankruptcy courts." In re Enron Power Mktg., Inc., No. 01-cv-7964, 2003 WL 68036, at *7 (S.D.N.Y. Jan. 8, 2003). It is therefore no answer to the efficiency arguments raised by the plaintiff to say, as the defendants do, that at some later point the Court may need to withdraw the reference so the parties can have a jury trial. As explained above, if the proceeding progressed to trial, the defendants could seek to withdraw the reference at that time. "But until that time, it is plain that efficiency would be served by leaving this adversary proceeding in the Bankruptcy Court, which is currently supervising discovery." In re Ne. Indus. Dev. Corp., 511 B.R. 51, 54 (S.D.N.Y. 2014).

The defendants' argument that de novo review of the Bankruptcy Court's report and recommendation would be inefficient

(in the event the defendants are not ultimately entitled to a jury trial) fares no better. To the contrary, "experience strongly suggests that having the benefit of the report and recommendation will save the district court and the parties an immense amount of time." In re Madoff, 490 B.R. at 58. And in any event, "[t]he hypothetical possibility of duplicative proceedings ... cannot outweigh the efficiency of receiving the recommendation of a court that possesses both intimate familiarity with the underlying liquidation and substantial expertise in the bankruptcy law that applies to these avoidance actions." Id.

*    *    *

Although the Bankruptcy Court lacks authority to enter final judgment on the plaintiff's avoidance claims, considerations of judicial economy strongly favor allowing the Bankruptcy Court to continue managing the pretrial process. If the defendants are entitled to a jury trial on the avoidance claims, then the defendants can renew their motion for permissive withdrawal of the reference when those claims are ready for trial.

<strong>IV.</strong>

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit. For the foregoing reasons, the

defendants' motion to withdraw the reference to the Bankruptcy Court is **denied without prejudice.**

The Clerk is directed to close ECF Nos. 1, 29, and 36, and to close this case.

**SO ORDERED.**

Dated:     **New York, New York**
           **December 9, 2025**

                                        _____
                                             **John G. Koeltl**
                                    **United States District Judge**